[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-13067
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
FEB 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00204-CR-F-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KIWANIS MIYO JONES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(February 10, 2009)**

Before BARKETT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Kiwanis Miyo Jones appeals his convictions and sentences for numerous

drug and firearm offenses.  After a thorough review of the record, we affirm.

I. Background

Jones was indicted for possession with intent to distribute 62.6 grams of crack cocaine (Count 1), 95.8 grams of powder cocaine (Count 2), 456.2 grams of marijuana (Count 3), and 64.79 grams of ecstacy (Count 4), all in violation of 21 U.S.C. § 841; using and carrying a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c) (Count 5); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count 6).  In the indictment, the government identified prior controlled substance convictions in 1998 and 2006 that rendered Jones subject to enhanced penalties under 21 U.S.C. §§ 841(b)(1)(A) and 851.

Prior to trial, Jones moved to suppress evidence seized from a search of a home at 111 Cullman Street on the grounds that the search warrant was stale and the information that formed the basis for the warrant was unreliable.  At the suppression hearing, Montgomery Police Detective Tinisha Haughton testified that she had received several complaints of drug activity at the Cullman Street house in January 2007.  Haughton then used a confidential informer to make controlled buys of drugs from the house on January 20, 2007.  On January 21, Haughton received an anonymous tip that a gold Lincoln Town Car, later determined to be

2

registered to Jones, was at the house and there was a lot of activity. Haughton conducted drive-by surveillance and observed the Lincoln at the house. Based on the complaints and the controlled buy, Haughton obtained a warrant on January 23, 2007. On the afternoon of February 1, 2007, police executed the warrant and found drugs in the bedroom and hall closet and utility bills in Jones's name.

Based on the magistrate judge's recommendations, and over Jones's objections, the district court denied the motion to suppress, concluding that there was no evidence the warrant was stale, but even if it was, the officers acted in good faith because, as Jones conceded, the warrant was facially valid.

The testimony at trial established the following facts: After obtaining a search warrant for the Cullman Street house, police arrived to execute the search but received no answer when they knocked on the door. Officers noticed three men fleeing out the back door. The men were identified as Jones, Anthony Jackson, and a juvenile. Pursuant to the warrant, police searched the house and found ecstacy pills in the hall closet and second bedroom. In the master bedroom, police found crack, powder cocaine, and marijuana. In the second bedroom, police found a CD case with marijuana residue on it and a firearm. The firearm, which was found under the table with the CD case on it, was operable and had been manufactured in Germany. The total amount of drugs found in the house was 62.6

3

grams of crack, 95.8 grams of cocaine, 456.3 grams of marijuana, and 64.79 grams of ecstacy.

In the den and dining room, the officers found a scale and ziplock bags, which are often used by drug dealers to package drugs. Police also found utility bills and medications in Jones's name, pictures of Jones, and a uniform with the initials K.J. on it. The officers also recovered a cell phone on Jones, but the contract was in the name of Seamus Cobb. According to police, it is common for drug dealers to put property in other people's names. When Cobb was arrested a few weeks later, he gave police his phone number, which matched a number found in the phone taken from Jones. In addition to the cell phone, police removed about $3,155 from Jones's person. Most of this was in small bills, which is consistent with drug dealing.[1]

Jones did not testify, but submitted copies of utility bills showing that he contracted for gas service from June 2004 through April 2006, power service from May 2004 through November 2006, and water service that had been shut off and transferred to Cobb's name in December 2006. He also submitted bills showing the power was listed in Cobb's name from November 2006 through November

---

[1] Jones moved for judgment of acquittal at the close of the government's case and again at the close of all the evidence. He also filed a post-judgment motion for acquittal. Thus, he has preserved his sufficiency-of-the-evidence challenge.

4

2007.

The jury convicted Jones on all counts, finding that the amount of crack was 50 grams or more, the amount of cocaine was less than 500 grams, and the amount of marijuana was less than 100 kilograms.

In the presentence investigation report ("PSI"), the probation officer grouped Counts 1 through 4 and 6 together and assigned a base offense level of 20 due to the amount of drugs.[2] The probation officer added 2 levels for role in the offense, resulting in an adjusted offense level of 32. Jones, however, qualified as a career offender under U.S.S.G. § 4B1.1, which increased his offense level to 37, his criminal history to VI, and his guidelines range to 360 months to life imprisonment. Because the government had filed its intent to seek sentencing enhancements under 21 U.S.C. §§ 841(b)(1)(A) and 851, the resulting statutory sentence was life imprisonment on Count 1. Relevant to this appeal, Jones objected to the application of the career offender guideline and the § 851 enhancement.

At sentencing, Haughton testified that she executed the search warrant and apprehended Jones, Jackson, and juvenile Martavious Thomas fleeing the house.

---

[2] Count 5, the § 924(c) count, required a statutory consecutive term of five years' imprisonment. 18 U.S.C. § 924(c). Thus, this count was not grouped with the other counts for guidelines calculations.

She interviewed Thomas, who waived his rights and admitted that Jones and Jackson offered him the opportunity to earn money packaging and selling drugs. Jones objected to this hearsay testimony as in violation of the confrontation clause and Crawford v. Washington, 514 U.S. 36 (2004). The court overruled the objection.

Jones then objected to the § 851 enhancement, arguing that it violated equal protection, his pleas in the prior convictions had been involuntary, and his 1998 conviction violated double jeopardy. He further asserted that the jury had not found those prior convictions beyond a reasonable doubt. The court overruled the objection and sentenced Jones to life imprisonment on Count 1, 360 months' imprisonment on Counts 2 and 4, and 120 months' imprisonment on Counts 3 and 6, all to run concurrently. The court sentenced Jones to 60 months' imprisonment on Count 5, to run consecutively to the other sentences. Jones objected to the failure to apply a sentencing variance and argued that the sentence was unreasonable. This appeal followed.

II. Discussion

On appeal, Jones challenges (1) the denial of his motion to suppress; (2) the sufficiency of the evidence; (3) the use of hearsay statements at sentencing; and (4) the application of enhanced penalties under 21 U.S.C. § 841(b)(1)(A) and the

career offender guideline.

1. Motion to Suppress

Jones argues that the court should have suppressed the evidence seized during the search at Cullman Street because the information used to obtain the warrant was stale and unreliable.

"A district court's ruling on a motion to suppress presents a mixed question of law and fact." United States v. Zapata, 180 F.3d 1237, 1240 (11th Cir. 1999). We accept the district court's findings of fact to be true, unless shown to be clearly erroneous, and review de novo the district court's application of the law to those facts. Id. "[A]ll facts are construed in the light most favorable to the prevailing party below." United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000). "The individual challenging the search bears the burdens of proof and persuasion." United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998). We review de novo whether the good faith exception to the exclusionary rule applies to a search, adhering to the underlying facts upon which that determination is based unless they are clearly erroneous. United States v. Robinson, 336 F.3d 1293, 1295 (11th Cir. 2003).

The Fourth Amendment protects persons from unreasonable searches and seizures, and mandates that a warrant will issue only upon a showing of probable

cause. U.S. Const. amend. IV.

Under the exclusionary rule, however, "[e]vidence seized as the result of an illegal search may not be used by the government in a subsequent criminal prosecution." Id. at 1312. The Supreme Court has created a good faith exception to this rule, permitting the admission of evidence obtained by officers acting in reasonable reliance upon a search warrant later found to be unsupported by probable cause. United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). Under the Leon good faith exception, suppression is required "only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Martin, 297 F.3d 1308, 1313 (11th Cir. 2002) (citing Leon, 468 U.S. at 926) (quotations and citation omitted).

Here, the district court found that the warrant was supported by probable cause, but even if it was not, the police acted in good faith. Jones does not challenge the district court's determination that the good faith exception applies. Thus, even if we were to conclude that the warrant was stale, Jones has abandoned any challenge to the application of the good faith exception. United States v. Smith, 416 F.3d 1350, 1354 (11th Cir. 2005). Accordingly, we find no error in the denial of the motion to suppress.

8

2. Sufficiency of the Evidence

We review de novo the sufficiency of the evidence presented at trial, viewing the evidence "in the light most favorable to the government, with all inferences and credibility choices drawn in the government's favor." United States v. LeCroy, 441 F.3d 914, 924 (11th Cir. 2006). "It is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." United States v. Perez-Tosta, 36 F.3d 1552, 1557 (11th Cir. 1994) (internal quotation marks and citations omitted). Instead, we "must affirm the conviction if we find that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Nolan, 223 F.3d 1311, 1314 (11th Cir. 2000) (internal quotation marks and citation omitted). In reviewing witness testimony, the jury makes credibility choices, and we will assume that it made them in the way that supports the verdict. United States v. Thompson, 473 F.3d 1137, 1142 (11th Cir. 2006).

Here, Jones was convicted of possession of controlled substances, using and carrying a firearm in furtherance of a drug trafficking offense, and possession of a firearm by a convicted felon.

a. drug offenses

To convict Jones of possession with intent to distribute drugs, the government was required to show Jones's (1) knowing or intentional (2) possession of a controlled substance (3) with intent to distribute that substance. 21 U.S.C. § 841(a)(1). "Intent to distribute can be proven circumstantially from, among other things, the quantity of cocaine and the existence of implements such as scales commonly used in connection with the distribution of cocaine." United States v. Poole, 878 F.2d 1389, 1392 (11th Cir. 1989). Other relevant factors include the defendant's possession of a firearm, a large amount of cash, or an implement used to cut up drugs. United States v. Marszalkowski, 669 F.2d 655, 662 (11th Cir. 1982); see also United States v. Wilson, 183 F.3d 1291, 1299 (11th Cir. 1999).

The elements may be proven by circumstantial evidence. United States v. Farris, 77 F.3d 391, 395 (11th Cir. 1996). "Possession may be actual or constructive, joint or sole." United States v. Gunn, 369 F.3d 1229, 1234 (11th Cir. 2004). "A defendant has actual possession of a substance when he has direct physical control over the contraband." United States v. Edwards, 166 F.3d 1362, 1363 (11th Cir. 1999). "A defendant's constructive possession of a substance can be proven by a showing of 'ownership or dominion and control over the drugs or over the premises on which the drugs are concealed.'" United States v. Clay, 355

F.3d 1281, 1284 (11th Cir. 2004).

Viewing the evidence in the light most favorable to the government, the evidence was sufficient to support Jones's convictions for possession with intent to distribute drugs. Jones fled as police arrived at the house. When he was apprehended, he had $3,155 in cash on him, much of this in small bills, which is consistent with drugs deals. Police found significant amounts of drugs in the house, along with scales and ziplock bags. In addition, the jury was free to infer that Jones was responsible for the residence. Police found photos of Jones, medication bottles in Jones's name, and a uniform with the initials K.J. in the house. They also found utility bills for the residence in Jones's name and Jones's car had been seen at the house on several occasions. Although Jones disputed that the house was his and submitted evidence to show that the utilities were no longer in his name, the jury also heard testimony that drug dealers often use other people's names on property. Thus, the evidence was sufficient to establish Jones's guilt on the drug charges.

b. using and carrying a firearm

To convict Jones of using and carrying a firearm in connection with a drug trafficking offense, the government was required to show that Jones "(1) knowingly (2) possessed a firearm (3) in furtherance of any drug trafficking

11

crime for which he could be prosecuted in a court of the United States." United

States v. Woodard, 531 F.3d 1352, 1362 (11th Cir. 2008). The first element under

both §§ 922(g)(1) and 924(c) - knowing possession of a firearm - may be proved

by evidence of either actual or constructive possession. See United States v. Pedro,

999 F.2d 497, 500 (11th Cir. 1993). A defendant has construction possession if he

has "ownership, dominion, or control" over the firearm itself. United States v.

Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (quotation omitted). "[A] person

who owns or exercises dominion and control over a residence in which contraband

is concealed may be deemed to be in constructive possession of the contraband."

United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006) (quotation omitted).

"The defendant may exercise that dominion and control either directly or through

others." United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004).

The defendant "must have both the intent and the power to exercise

dominion and control over the [firearm]." Pedro, 999 F.2d at 500 (quotations

omitted). Moreover, the defendant "must, in fact, know of the firearm's existence

in order to exercise dominion and control over it." Id. However, "a defendant's

mere presence in the area of [an object] or awareness of its location is not

sufficient to establish possession." Id. at 500-01 (quotations omitted).

The "in furtherance" element of a § 924(c) offense requires proof of a nexus

12

between the firearm and the drug trafficking offense. United States v. Molina, 443 F.3d 824, 829 (11th Cir. 2006). In determining whether the requisite nexus existed, the court should consider factors such as "(1) the accessibility of the firearm to the defendant; (2) the proximity of the firearm to the drugs or drug profits; (3) the status of the possession (legal or illegal); and (4) the circumstances under which the gun was found." United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir. 2002). A jury may infer that the purpose of a firearm located near drugs was to provide defense or deterrence in furtherance of a defendant's drug trafficking activity. United States v. Miranda, 425 F.3d 953, 962 (11th Cir. 2005).

Here, the evidence was sufficient to establish that Jones knowingly possessed the gun and that the gun was used in furtherance of the drug offenses. Based on the evidence, the jury could infer that Jones was responsible for the residence and thus had constructive possession over the gun and drugs. The firearm was readily accessible under a table that had a CD case with drug residue on it. There were drugs and drug paraphernalia throughout the house and Jones was carrying a large amount of cash, consistent with drug dealers. Based on this evidence, the jury could have concluded that Jones used and possessed the firearm in furtherance of the drug offenses. See Molina, 443 F.3d at 830 (upholding convictions where the firearm was found in the drawer of the defendant's

13

nightstand, in close proximity "to the drugs, digital scales, and [a] large amount of money in the bedroom closets."); United States v. Suarez, 313 F.3d 1287, 1292-93 (11th Cir. 2002) (upholding conviction where there were numerous loaded firearms and ammunition distributed in different places in the house and that were easily accessible).

c. possession of a firearm by a convicted felon

To convict Jones of being a felon in possession of a firearm, the government had to show that (1) Jones knowingly possessed a firearm; (2) Jones was previously convicted of an offense punishable by a term of imprisonment exceeding one year; and (3) the firearm was in or affecting interstate commerce. United States v. Palma, 511 F.3d 1311, 1315 (11th Cir. 2008). Here, Jones stipulated that he was previously convicted of a felony. The government satisfied the third prong by presenting evidence that the firearm was manufactured in Germany. United States v. Scott, 263 F.3d 1270, 1274 (11th Cir. 2001). And, as discussed above, there was sufficient evidence for the jury to conclude that Jones was in constructive possession of the firearm.

Accordingly, the evidence was sufficient to support Jones's convictions on all counts and we affirm his convictions.

3. Hearsay Evidence at Sentencing

14

Jones argues that the district court erred by permitting Haughton to provide hearsay testimony at sentencing, in violation of Crawford. He concedes, however, that this court has rejected this argument.

We review de novo the scope of a defendant's constitutional rights. United States v. Cantellano, 430 F.3d 1142, 1144 (11th Cir. 2005).

Crawford defines protections guaranteed by the Confrontation Clause of the Sixth Amendment, including the right to confront adverse witnesses. Crawford, 541 U.S. at 38, 42. This court has held that Crawford "does not apply to non-capital sentencing proceedings because 'the right to confrontation is not a sentencing right.'" Cantellano, 430 F.3d at 1146. Because we are bound by decisions of prior panels until overruled by this court sitting en banc or by the Supreme Court, United States v. Steele, 147 F.3d 1316, 1317-18 (11th Cir. 1998), we affirm on this issue.

4. Enhanced Penalties under § 841(b)(1)(A)

Jones argues that the district court erred by applying the enhanced sentence under 21 U.S.C. §§ 841(b)(1)(A) and 851 because his prior convictions were not proven to the jury beyond a reasonable doubt. He contends that Almendarez-Torres v. United States, 523 U.S. 224 (1988), is no longer good law, but that even if it is, his case is distinguishable and should be an exception requiring prior

convictions be pleaded in the indictment and proven to a jury.[3]

We review constitutional issues de novo. United States v. Paz, 405 F.3d 946, 948 (11th Cir. 2005).

Section 841(b)(1)(A) provides for a mandatory life sentence if the defendant has been convicted of two or more previous felony drug offenses. 21 U.S.C. § 841(b)(1)(A). Before the court may impose the enhanced sentence, the government must serve notice, identifying the prior convictions on which the enhancement relies. See 21 U.S.C. § 851(a).

There is no merit to Jones's argument that the prior convictions must be proven to the jury beyond a reasonable doubt. United States v. Wade, 458 F.3d 1273, 1278 (11th Cir. 2008). The district court and this court are bound by Almendarez-Torres until it is explicitly overruled by the Supreme Court. See United States v. Greer, 440 F.3d 1267, 1273-74 (11th Cir. 2006). Accordingly, there was no error in the court's application of the enhanced sentence under § 841(b)(1)(A).[4]

---

[3] Jones raised other challenges to the enhancement before the district court. Because he does not raise these arguments on appeal and argues only that the government was required to prove his prior convictions to the jury, he has abandoned his other arguments. Smith, 416 F.3d at 1354.

[4] Jones also challenges the application of the career offender guideline. Because we conclude that the district court properly applied the § 851 enhancement, we need not reach this issue as the guidelines calculations are no longer relevant and the term of imprisonment is set by statute. United States v. Raad, 406 F.3d 1322, 1323 n.1 (11th Cir. 2005) (explaining that when a district court correctly imposed the statutory mandatory minimum sentence, an error in the Guidelines

III. Conclusion

For the foregoing reasons, we AFFIRM Jones's convictions and sentences.

---

calculation is harmless and thus the court need not address an argument about the calculation).